## HORACE PRENTICE *v.* JAMES J. CHEWNING.

Plaintiff having obtained a judgment and issued execution against the defendant, certain property was seized, and sold with the consent of the latter. By an agreement between defendant and the purchaser, it was stipulated, that if defendant should pay the amount of the judgment, with costs and interest, to the purchaser by a certain time, the sale should be null, and the property belong to defendant; otherwise, the property to belong irrevocably to the purchaser. Defendant afterwards sold his right of redeeming the property, to a third person. *Held,* that these facts amount to a compromise, and satisfaction of the judgment, and deprive the defendant of the right of contesting its correctness by appeal.

APPEAL from the District Court of Carroll, *Curry*, J. The plaintiff having recovered a judgment for the amount of certain promissory notes, the defendant appealed. A motion to dismiss the appeal, on the ground of a voluntary execution of the judgment, was overruled, at the October term, 1841, (1 Robinson, 71,) the evidence in the record then before the court not sufficing to establish the fact of voluntary execution. The judgment of the lower court was, however, reversed, on account of an illegality in the composition of the jury, and the case remanded for a new trial. By an amended answer, filed after the return of the case to the District Court, the defendant alleged, that an illegal judgment had been rendered against him on the former trial, from which he

took a devolutive appeal, and which was reversed by the Supreme Court; that, in the interval between the rendering of the judgment and its reversal, plaintiff caused an execution to be levied on his property, which was satisfied by the sale of his property, from which plaintiff received $6500; and that, by the sacrifice of the property he, defendant, has sustained damage to the amount of $20,000, which he claimed in reconvention.

There was a verdict and judgment, on the second trial, in favor of the defendant, for $1616 40, with interest at eight per cent, from the 15th of May, till paid. From this judgment the plaintiff took the present appeal.

*Stacy* and *Sparrow*, for the appellant, contended, that the defendant had voluntarily executed the first judgment, and thereby deprived himself of all right to contest its correctness. Code of Practice, art. 567. 2 La. 265.

*Willson* and *Stockton*, for the defendant.

BULLARD, J. When this case was before us at a former term, (1 Robinson, 71,) a motion was made to dismiss the appeal, on the ground that the defendant and appellant had acquiesced in the judgment. The evidence then before us, did not authorize us to say, that there had been such a voluntary execution of the judgment as to preclude an appeal. The cause was remanded for a new trial. On the return of the cause to the court below, the plaintiff filed an amended petition, in which he set forth, that since the first judgment rendered, the parties had entered into a compromise of all the matters in litigation in the suit, as would appear by the Sheriff's return on the *fieri facias,* and the twelve months bond given by Selby, without security, and the counter letter between Chewning and Selby.

The Sheriff's sale shows, that the tract of land was sold with the consent of Chewning, under an execution issued in the case, and thatSe lby became the purchaser. The agreement between Selby and Chewning, which is called a counter letter, recites that Selby had bought at the Sheriff's sale, with the consent of Chewning, in the suit of *Prentice* v. *James J. Chewning,* No. 261, the south half of lot Nos. 67, and the whole of lots Nos. 68, 69 and 70, in Township No. 22, Range 13, east, and also the north half of lot No. 1, in Township No. 21, same range, containing 700

acres, more or less, *for six thousand five hundred dollars;* and also, one undivided half of certain slaves. It was agreed, that if Chewning should pay to Louis Selby, or his order, the full amount of the judgment, costs, and interest in the same case, at any time before the second day of November, 1841, then the Sheriff's sale, and the sale of the slaves, should be null and void, and the said negroes should be the property of Chewning, as if these sales had never been made. It was distinctly understood, that if Chewning should make a legal tender of the full amount of said judgment to said Selby, before November 2, 1841, all said sales should be null, and the property should be Chewning's again; if otherwise, then the said property to be absolutely and irrevocably Selby's. Chewning waives any right he may have to require Selby to put him in delay; and on the contrary, Chewning is to call on Selby, and tender him the money, or, in his absence, to deposit it in bank.

There is another document in the record, shewing, that Chewning had sold, in consideration of $4000, to W. Bailey, his right of redemption to the land in the agreement with Selby, and authorizing Selby to make a deed to him (Bailey) of the land, on his paying the amount of the judgment described in the contract.

The Sheriff's deed to Selby shows, that the land was sold to him, for $6500, with the consent of both parties, on a credit of one year, without requiring security. Chewning signed the deed.

If the same evidence had been before us on the former appeal, we should have dismissed it, on the ground of a voluntary payment of the judgment by the appellant. The facts now come out upon the new trial, and satisfy us, that the contract between Selby and the defendant, with the consent of the plaintiff, and the sale by Chewning of his right to redeem, amount to a compromise or transaction, and satisfaction of the first judgment.

It is, therefore, ordered and decreed, that the judgment of the District Court be reversed; and it is further ordered, that the judgment first rendered be reinstated, and that the plaintiff proceed to enter satisfaction on the same as extinguished by the transaction set forth in the amended petition, and that, for this purpose, the case be remanded to the District Court; and that the defendant pay the costs of the appeal.