Emile Fallo, as assignee of Lamana-Panno-Fallo, Inc., a concern engaged in the undertaking business in the city of New Orleans and commonly known as "funeral directors", brought this suit in the Twenty Fourth Judicial District Court for the Parish of Jefferson to recover from the defendant. Walter Kerner, the sum of $140 representing the alleged balance due by the defendant for funeral services rendered by Lamana-Panno-Fallo, Inc., to defendant's deceased wife, Mrs. Zellia Kerner, on July 24, 1939.
Defendant admits the performance of the services by plaintiff's assignor but contends that he has overpaid his obligation because Lamana-Panno-Fallo, Inc., was supposed to credit his account with the sum of $190, representing the face value of a funeral and burial policy on the life of his wife, which it failed to do.
After a trial in the lower court on the foregoing issue, there was judgment in favor of the defendant. Plaintiff has appealed.
The facts of the case, as shown by the record, are as follows: On July 24, 1939, *Page 67 
the defendant entered into a written contract with Lamana-Panno-Fallo, Inc., in which he authorized it to perform the necessary funeral services for his wife. The total cost of this funeral amounted to $505.50. Defendant was given credit on the account for $150, representing the face value of a burial insurance policy issued by Lamana-Panno-Fallo Burial Insurance Company in favor of his wife, leaving a cash balance due of $355.50 which the defendant agreed to pay and, as additional security for the obligation, he gave to the undertakers his promissory note in that amount. Thereafter, defendant paid by cash on account of this balance due the following amounts: August 26th, 1939, $55.50; September 18th, 1939, $50; January 6th, 1940, $100; June 15th, 1940, $10, or a total of $215.50, leaving an unpaid balance of $140.
The defendant declares in his testimony that the contract price of $505.50 for the funeral of his wife is incorrect; that, at the time the arrangements were made, he ordered a funeral not to exceed the sum of $350; that it was understood between the funeral directors and himself that he would be credited with the sum of $150, representing the value of the insurance policy, on account of the funeral charges leaving a balance due of $200 and that, as he has admittedly paid by cash the sum of $215.50 to the undertakers, he has, in reality, overpaid his account by the sum of $15.50.
The difficulty with the defendant's testimony is that it is in direct conflict with the written contract he made with the funeral directors which shows that the total cost of the funeral he ordered for his wife was $505.50. This contract reveals that he was credited with the value of the insurance policy and that he executed his promissory note as additional security for the balance due amounting to $355.50. It is further shown by the evidence that, since the date of the contract and the performance of the funeral services, the funeral company has made repeated efforts to have the defendant liquidate the balance due on his indebtedness without success; that, although the defendant made payments totaling the sum of $215.50 on account, he has ignored the demands made upon him and that at no time, prior to the filing of the instant suit, did he suggest or maintain either that the funeral company failed to credit him with the amount of the face value of the burial policy or that he did not agree to pay the price stipulated in the written contract. In these circumstances, it is obvious that his belated attempt to escape his just obligation cannot prevail.
During the course of the trial, after counsel for plaintiff had introduced in evidence the written contract for the funeral services and the promissory note executed by defendant for $355.50, counsel for the defendant filed an exception of no cause of action and maintained that the giving of the promissory note operated as a novation of defendant's indebtedness. Counsel contended that, since the debt was novated, plaintiff, as assignee of Lamana-Panno-Fallo, Inc., was plainly without a cause of action to sue on the contract for the funeral services.
This point would be well founded if a novation of the debt could be established. But the written contract between the defendant and Lamana-Panno-Fallo, Inc., exhibits that the promissory note was accepted by the latter as an additional obligation securing the payment of the balance due on the account and that the parties did not intend to extinguish the original debt. The contract declares that nothing contained therein shall preclude Lamana-Panno-Fallo, Inc., from filing a claim against the estate of the decedent and that the obligation of the defendant shall be deemed to be a joint and several obligation with the estate. This provision makes it manifest that the promissory note given by the defendant was not intended to have the effect of releasing him from his liability to pay the debt contracted for. It merely afforded to the funeral company an additional right which it could have enforced at its option. Novation is never presumed, it is a matter of clear intention of the parties. See Isaacs v. Van Hoose, 171 La. 676, 131 So. 845
and White Co. v. Hammond Stage Lines, 180 La. 962, 158 So. 353.
Counsel for the defendant also directs our attention to the fact that plaintiff alleges in his petition that the total price of the funeral services ordered by defendant amounted to $355.50 and he argues that, in view of this allegation, plaintiff should not have been permitted to show that the contract price was $505.50.
We are unable to find any substance in this contention. While it is true *Page 68 
that the petition alleges that the defendant ordered funeral services totaling $355.50, this is obviously an error which is fully explained by the itemized statement of defendant's account attached to and made part of plaintiff's petition. This itemized statement exhibits that the total price of the funeral was $505.50 less a credit on account of the insurance policy of $150, leaving a balance of $355.50. Deducted from that amount on the itemized statement is the sum of $215.50 cash payments on account, leaving a balance due and unpaid of $140, the amount for which recovery is sought.
It is the well-settled jurisprudence of this State that, where there is a variance between the allegations of a petition and the exhibits attached thereto in support thereof, the latter controls. See Woodward-Wight Co. v. Haas, La.App., 149 So. 161; Alliance Trust Co. v. Paggi-Streater Co., 173 La. 356, 137 So. 60
and John Bonura Co. v. United Fruit Co., 162 La. 53,110 So. 86.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Emile Fallo, and against the defendant, Walter Kerner, for the full sum of $140, with legal interest thereon from September 1, 1939, until paid, and all costs.